UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THEASTER MALLET, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 05-5586 |
| v. | : | MEMORANDUM OPINION & ORDER |
| JOHN E. POTTER, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE, | : : | |
| Defendant. | : | |

This matter has come before the Court on Defendant's motion for summary judgment. Oral argument was held on March 10, 2008, and the record of that proceeding is incorporated here. For the reasons expressed on the record that date, as well as those that follow, the motion will be granted.

## Background

Plaintiff Theaster Mallet filed the Complaint in this matter against his employer, the Postmaster General of the United States Postal Service, Eastern Area. He alleges that he was discriminated against on the basis of his age and race, in violation of the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964, when he was not selected to fill a vacant position with the Postal Service.

On or about October 16, 2004, the maintenance manager at the Postal Service's Mount Holly, New Jersey facility accepted a promotion, vacating the maintenance manager's position. The open position, at grade level EAS-16, was not posted in accord with the Postal Service Employee and labor Relations Manual because a noncompetitive application for voluntary lateral reassignment or change to a lower level had been received.

At the time, Mallet had been employed for four years at EAS-17 as a supervisor of maintenance operations assigned to the South Jersey Processing and Distribution Center in Bellmawr, New Jersey.  He also had sixteen years experience in postal maintenance.

On November 16, 2004, Mallet hand-delivered his P.S. Form 991 application and a letter indicating his interest in a "non-competitive lateral transfer" to the Mount Holly maintenance manager's position to Gary Carrasquillo, the Mount Holly Postmaster. (Mallet Dep., Exh. 3.)  He felt that the manager's position had "an enhanced status, greater networking possibilities, and business travel opportunities, thereby creating a greater potential for promotion." (Compl. ¶ 15.)  Although the position was at a lower grade level, Mallet's pay would have remained the same. (Id.)  In addition, the manager's position was located at a facility significantly closer to Mallet's home. (Id.)

After calling Mallet's second level manager about his performance, Carrasquillo interviewed Mallet on November 22, 2004, but Mallet did not feel he was given a fair interview because no questions were asked of him regarding maintenance, a key component of the open position, and because "Carrasquillo avoided eye contact with Mallet, hurried through the interview, and made no effort to get to know Mallet or find out his abilities." (Compl. ¶ 19.)  Mallet called Carrasquillo on November 24, 2004, and learned that the other individual who had applied for the position, Gary Jones, had been selected. (Id. at ¶ 20.)  Jones had previously been a customer service supervisor at the Mount Holly facility; and Mallet has alleged he had no maintenance experience or responsibilities. (Compl. ¶ 23.)

Mallet is African-American, and in 2004 he was fifty-six years old.  Gary Jones is Caucasian, and was thirty-six years old at the time.

2

## **Summary Judgment Standard**

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the

moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## Discussion

The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose. Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 525-27 (3d Cir. 1992). Analysis of Mallet's claims is governed by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, an employee must first establish by a preponderance of the evidence a prima facie claim of discrimination by showing (1) the plaintiff is a member of a protected class; (2) he or she was qualified for the position sought; (3) he or she was subject to an adverse employment action despite being qualified; and (4) the employer treated more favorably those not in the protected

class or, under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to plaintiff's to fill the position. Sarullo v. United States Postal Service, 352 F.3d 789, 797 (3d Cir. 2003) (citations omitted). The prima facie test is a flexible one which must be tailored to fit the specific context in which it is applied. Id. at 797-98.

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment decision. McDonnell Douglas, 411 U.S. at 802. The employer may satisfy this burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). However, "[a]n employer cannot successfully defend a hiring decision against a Title VII challenge merely by asserting that the responsible hiring official selected the man or woman who was 'the right person for the job.'" Iadimarco v. Runyon, 190 F.3d 151, 166 (3d Cir. 1999).

Once the employer meets this "relatively light burden," "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual." Fuentes, 32 F.3d at 763. A plaintiff may establish pretext directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered reason is unworthy of credence. Ezold, 983 F.2d at 523. One of these is sufficient; the employee does not have to prove both that the explanation is implausible and that discrimination was a motivating factor. Waldron v. SL Indus., Inc., 56 F.3d 491, 494-95

5

(3d Cir. 1995). On the other hand, the employee cannot carry his burden by showing that the employer's decision was "wrong or mistaken." Fuentes, 32 F.3d at 765. Rather, he must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder *could* rationally find them unworthy of credence," id. (citing Ezold, 983 F.2d at 531), "and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons,'" id. (citing Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993)).

>    1. Plaintiff cannot establish a prima facie case because he did not suffer an "adverse employment action" when he was not selected for the Mount Holly maintenance manager's job.

"An adverse employment action is one which is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997)). "[E]mployment decisions such as transfers and demotions may suffice to establish the third element of plaintiff's prima facie case." Jones v. Sch. Dist., 198 F.3d 403, 411-12 (3d Cir. 1999) (involuntary transfer to two schools, one of them being a "difficult school," and the second school's failure to assign the plaintiff to the physics department despite that he was a physics teacher was adverse employment action); see also Torre v. Casio, Inc., 42 F.3d 825, 831 n.7 (3d Cir. 1994) ("[A] transfer, even without loss of pay or benefits, may, in some circumstances, constitute an adverse job action," such as when plaintiff is transferred "to a dead-end job that had effectively been eliminated before he was transferred to it."). The Third Circuit has held, however, that the denial of a request for a purely lateral transfer does not, by

6

itself, constitute an adverse employment action.  Fallon v. Meissner, 66 Fed. Appx. 348, 351 (3d Cir. 2003) (no inference of age discrimination results from merely denying an older employee a transfer, even when the selectee is under forty years old with no prior experience).  See also Langley v. Merck & Co., 186 Fed. Appx. 258, 260 (3d Cir. 2006) ("Minor actions, such as lateral transfers and changes of title and reporting relationships, are generally insufficient to constitute adverse employment actions.").

Further, in order for an employment action to be materially adverse, the "adversity" must be "job related."  Fallon, 66 Fed. Appx. at 352.  The desire to and work in a particular city, or in a location other than where one currently works, is not "job related" for purposes of finding an adverse employment action.  Id.; see also DiIenno v. Goodwill Indus. Of Mid-Eastern Pa., 162 F.3d 235, 236 (3d Cir. 1998) (unlike a desire to live in a certain city, an inability to do a particular job is job-related, so transfer to a job that an employer knows employee cannot do may be adverse employment action).

Plaintiff's subjective preferences cannot be used to show that he suffered an adverse employment action.  Therefore, the arguments that the maintenance manager position was located closer to his home and entailed less physical demands are not persuasive.  He also contends that the maintenance manager position had enhanced status, greater networking possibilities and business travel opportunities, creating a greater potential for promotion.  He bases this argument on the fact that the previous maintenance manager had been promoted to an EAS-23 position, however, and not on any objective assessment of the positions in relation to each other.  See also Rafferty Dep., p. 27 ("Q: [W]ould you say a manager has a better opportunity at promotion as opposed to a supervisor?  A: Not necessarily.  Q: . . . It depends on the individual?  A: Right.").

Indeed, in applying for the maintenance manager position, which was offered at a grade level *lower* than the job Plaintiff holds, Plaintiff asked for a "lateral transfer." He also testified at his deposition that he requested a "lateral transfer." (Mallet Dep., p. 20.) There is no basis in the record for the Court to determine that the material effects of the failure to select Plaintiff for the maintenance manager position should be deemed significant. Because there is no foundation for a finding that the Defendant's failure to select Plaintiff for the maintenance manager position affected his compensation, terms, conditions, or privileges of employment, there can be no materially adverse employment action. Thus, Plaintiff has not made out a prima facie case of discrimination.

> 2. Alternatively, assuming Plaintiff has produced prima facie evidence of discrimination, Defendant proffers legitimate, non-discriminatory reasons for its decision, which Plaintiff has not shown are pretextual.

The requirements of the maintenance manger position included, among other things, safety skills, computer skills to generate reports, maintenance experience, knowledge of maintenance operations, knowledge in scheduling of technicians and maintenance employees and pulling reports, knowledge of working with machinery and equipment and maintaining the accuracy of the machine. (Carrasquillo Dep., p. 35, 52, 66-67.) Carrasquillo elaborated that he consider the candidates' knowledge, presentation at the interview, "the whole package . . . whether or not they had the opportunity and the initiative and the drive." (Carrasquillo Dep., p. 53.)

As the selecting official, Carrasquillo selected Jones because he was familiar with Jones's performance and experience at Mount Holly, supervising mail clerks, postal carriers, and rural carriers. He testified:

> Mr. Jones was an excellent supervisor. He was very crucial in helping us with the PEG file which is the program evaluation guide which is very extensive to the security and safety programs. He's very knowledgeable in the carrier operation, the clerk operation, the rural carrier operation. He was starting to learn finance operation. He did ordering and contracting, dealt with contractors. He ordered supplies, parts. . . . [H]e had a computer background. He had a safety background. He worked for the fire department. He was an EMT. So I thought that could possibly have been a good selection for my office in Mount Holly since he was familiar with the entire operation.

(Carrasquillo Dep., p. 30.) Jones had impressive safety experience and had helped the Mount Holly facility achieve a high score on the annual safety or "PEG" (performance evaluation guide) audit. He had extensive computer training and expertise. Within the Mount Holly facility, Jones had been responsible for various building maintenance duties and scheduling. While Jones may have lacked experience with some specific maintenance duties, he had taken initiative to observe and learn aspects of maintenance prior to the interview. (Carrasquillo Dep., p. 57, 58, 65-66, 89, 96, 106.)

During the interview, Jones provided responsive answers and elaborated on his knowledge and experience pertaining to the vacant position. Carrasquillo was pleased with the general breadth of Jones's experience, and felt confident that Jones could cover for the other supervisors or the Postmaster when necessary.

Conversely, Carrasquillo did not feel that Mallet elaborated on his answers sufficiently to explain how his knowledge, skills, or experience as a maintenance supervisor applied to the Mount Holly maintenance manager's position. (Carrasquillo Dep., p. 86.) Rather, he gave brief (or no) answers and repeatedly stated that he had seventeen years of supervisory experience in maintenance, but Carrasquillo could see that he had just been promoted in 2001 and before that he was a custodian with only

9

temporary/detail assignments as a supervisor of maintenance operations. (Carrasquillo Dep., p. 56, 82, 86-87, 89, 96.) Mallet also had little or no experience with requirements of the position, such as running a delivery operation, which Carrasquillo asked about during the interview. (Mallet Dep., p. 52; Carrasquillo Dep., p. 97.) Finally, Mallet did not know that Mount Holly had received the third highest score in South Jersey on the annual PEG evaluation (Carrasquillo Dep., p. 90); this fact was important to Carrasquillo.

Mallet has put forth no evidence that would dispute any of the above contentions, all of which constitute legitimate, non-discriminatory reasons for his non-selection. To show pretext, Mallet cites to his "gut feelings" or perception, based on his life experiences, that Carrasquillo was biased and prejudiced against him because of his race. He states that Carrasquillo did not maintain eye contact with him during his interview, hurried through the interview, and made no effort to get to know Mallet or find out his abilities. He has produced no evidence, however, aside from his own statements, to support his general assertions of pretext.[1] Of course, Plaintiff may not rest on vague statements to survive summary judgment. Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991).

---

[1] Although he testified that he heard rumors and observed that Carrasquillo hired only young Caucasians, (Mallet Dep., p. 29 and Exh. 1), Mallet has could not articulate where or from whom he heard the rumors, what he observed, or what positions or selections the rumors or observations concerned. Conversely, Carrasquillo testified as to individuals he had mentored and promoted, including older individuals and African-Americans. (Carrasquillo Dep., p. 111-15 and Exh. 3 at 9.) Mallet argues that those promotions occurred after his Complaint was filed, while Defendant states that the timing of the promotions is irrelevant.

Mallet also argues that during his interview, no questions were asked of him regarding maintenance. Thus, he seems to take issue with his maintenance experience having been given less weight than he thinks it should have been for the open position. A plaintiff's subjective belief that his qualifications should have been accorded more weight is not probative of pretext. See, e.g., Valdes v. Union City Bd. Of Ed., 186 Fed. Appx. 319, 323 (3d Cir. 2006). An employer is entitled to evaluate which qualifications best fit its needs in selecting a candidate. See Sarmiento v. Montclair State Univ., 513 F. Supp. 2d 72, 89 (D.N.J. 2007) (finding legitimate reasons for not selecting the more experienced candidate because it was up to the university to evaluate which qualifications best fit departmental needs). That is, a plaintiff's disagreement with assessment criteria and belief that he is better qualified for the position is not sufficient to avoid summary judgment. Langley, 186 Fed. Appx. at 261.

## Conclusion

Accordingly,

For the reasons stated here and those placed on the record at oral argument,

IT IS ORDERED on this 17th day of March, 2008 that Defendant's motion for summary judgment [12] is hereby GRANTED.

>     /s/ Joseph H. Rodriguez
>     JOSEPH H. RODRIGUEZ
>     U.S.D.J.